[No. 28176-3-I.    Division One.    May 4, 1992.]

WALTER SORENSON, *Appellant*, v. KEITH UDDENBERG, INC., ET AL, *Respondents*.

*Lynne C. Wilson* and *Sinsheimer & Meltzer,* for appellant.

*Jeffrey P. Downer* and *Lee, Smart, Cook, Martin & Patterson, P.S., Inc.,* for respondents.

KENNEDY, J. — Walter Sorenson appeals the dismissal on summary judgment of his claim of negligence against the respondents Keith Uddenberg, Inc., and The ABC Pacific Corporation in this "slip and fall" case. Because we find that respondents may have breached a duty to Sorenson, we reverse and remand.

FACTS

Respondent Keith Uddenberg, Inc., is the operator of the Federal Way Stock Market Foods (Stock Market Foods). The

property on which the store sits is owned by respondent ABC Pacific Corp. (ABC). In the late afternoon of March 3, 1989, appellant went to the Stock Market Foods and parked in its parking lot.

There was snow in the parking lot that day because there had been a snowfall 2 days before. When the appellant was going into the store, he realized that he had forgotten to lock his car door. He returned to the car, locked the door, and when he was heading back to the store again, he stepped on ice. His feet went out from under him, and he caught himself with his left arm on the trunk of his car. Appellant claims that although he was watching for snow and ice, he was not aware of the particular patch of ice on which he slipped at the time of the fall. Because of the accident, the appellant suffered injury to his left shoulder.

At the time of the accident, Uddenberg employed Superior Parking Lot Service (Superior) to maintain and clean the parking lot twice a week. Superior usually performed this maintenance between midnight and 6 a.m. However, when it was snowing, Superior would maintain the parking lot on a daily basis for as long as it took to remove the snowfall. Superior used snowplows to remove the snow and also sanded the parking lot. Snow would be plowed into piles against the light standards in the middle of the parking lot, the sides of the parking lot, and the retaining wall at the bottom of the hill on which the parking lot was located.

After the March 1, 1989, snow, Superior had plowed part of the snow into a large stack by the three light standards in the middle of the parking lot. This snow pile stood between 4 and 5 feet high and was about 12 to 15 feet across. Appellant contends that the ice on which he slipped originated from melting water at the base of the snow pile by the light standard. In deposition, the store manager confirmed that ice had formed from melted runoff of the snow piled near the light standard. At the place where the appellant slipped, the ice was not sanded. Appellant filed the instant complaint on June 22, 1990, alleging negligence on the part of respondents in the failure to correct or warn of the icy conditions in the parking lot. Uddenberg and ABC

moved for summary judgment on February 19, 1991, claiming that they had not breached their duty of reasonable care in this situation. The motion was granted on March 20, 1991, and this appeal followed.

## DISCUSSION

In determining whether an order of summary judgment is correct, this court is to engage in the same inquiry as the trial court. *Rhea v. Grandview Sch. Dist. JT 116-200*, 39 Wn. App. 557, 559, 694 P.2d 666 (1985). A motion for summary judgment should be granted if there is no genuine issue of material fact or if reasonable minds could reach only one conclusion on that issue based upon the evidence construed in the light most favorable to the nonmoving party. *Sea-Pac Co. v. United Food & Comm'l Workers Local Union 44*, 103 Wn.2d 800, 802, 699 P.2d 217 (1985). The granting of summary judgment is proper if the nonmoving party, after the motion is made, fails to establish any facts which would support an essential element of its claim. *Young v. Key Pharmaceuticals, Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)). The burden is on the nonmoving party to make out a prima facie case concerning an essential element of the claim if the moving party first shows that there is an absence of evidence to support the nonmoving party's case. *Young*; *see also Hash v. Children's Orthopedic Hosp. & Med. Ctr.*, 110 Wn.2d 912, 915, 757 P.2d 507 (1988).

The parties argue the issue of breach of duty in the present case in terms of whether the respondent met the conditions necessary for liability under the Restatement (Second) of Torts § 343 (1965).[1]

---

[1] The Restatement (Second) of Torts § 343 provides that: "A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

"(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

"(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

"(c) fails to exercise reasonable care to protect them against the danger."

Although the Restatement approach has been adopted in this state in certain cases dealing with proprietor liability,[2] it has not yet been adopted in this state in cases seeking to hold a proprietor liable for injuries resulting from a fall occurring because of icy weather conditions. We decline to adopt the Restatement approach, choosing instead to rule on the issue using a traditional negligence analysis.[3]

■ "In order to prove actionable negligence, a plaintiff must be able to establish '(1) the existence of a duty owed to the complaining party, (2) a breach thereof, and (3) a resulting injury.' " *Petersen v. State*, 100 Wn.2d 421, 435, 671 P.2d 230 (1983) (quoting *LaPlante v. State*, 85 Wn.2d 154, 159, 531 P.2d 299 (1975)). In moving for summary judgment based on the Restatement approach, respondents claimed that they did not owe a duty to the appellant because they were not aware of the particular patch of ice on which the appellant slipped, or, alternatively, that the appellant should have been expected to recognize the danger and to take steps to avoid it.

It is true that in general, a proprietor has no duty to protect invitees from dangerous conditions of which the proprietor has no knowledge or which were not caused by the proprietor's actions. *Wiltse v. Albertson's, Inc.*, 116 Wn.2d 452, 453, 805 P.2d 793 (1991). Alternatively, if the danger is obvious, the proprietor of the premises may reasonably expect an invitee to discover it and protect himself. Division Three of our court has recently construed these principles, in light of prior case law, into a blanket rule forbidding recovery to an invitee who was injured from a fall on ice or snow which

---

[2]*See, e.g., Pearce v. Motel 6, Inc.*, 28 Wn. App. 474, 478, 624 P.2d 215, *review denied*, 95 Wn.2d 1024 (1981).

[3]The Restatement approach posits that if a proprietor is aware of a dangerous condition on his land that the invitee is not aware of, then a duty arises to protect the invitee from that danger. Because of the peculiar case law history regarding the liability for hazards which are caused by the natural elements, this may not always be true in the case of ice and snow. *See, e.g., Ainey v. Rialto Amusement Co.*, 135 Wash. 56, 236 P. 801, 41 A.L.R. 263 (1925). Therefore, we analyze the issue independently of the Restatement assumption.

has *naturally* accumulated in a proprietor's parking lot, irrespective of whether the danger was known to the proprietor or discoverable by the invitee. *See Schaeffer v. Woodhead,* 63 Wn. App. 627, 629, 821 P.2d 75 (1991).[4]

The record in the present case indicates that the ice on which the appellant slipped and fell probably was not the result of a natural accumulation of ice and snow, but instead the result of the refreezing of runoff from snow piles created by the plowing of the parking lot the previous day by the agents of the respondents.

▆▆ It has long been the law in this jurisdiction that if the ice upon which a party slips is caused by the action of a proprietor then a duty attaches to prevent harm from resulting therefrom. *Nadeau v. Roeder,* 139 Wash. 648, 650, 247 P. 951 (1926). It is immaterial that the ice in the present case may have resulted from an attempt to make the parking lot safer for invitees. If a party acts to correct a potentially dangerous condition, that party owes an independent duty to do so in a manner that is not negligent. *See Brown v. MacPherson's, Inc.,* 86 Wn.2d 293, 299, 545 P.2d 13 (1975). Thus, although a business owner ordinarily may have no duty to protect his or her invitees from the effects of a natural accumulation of ice and snow, if a mitigation of the hazard is undertaken, a duty arises to perform that mitigation in a nonnegligent manner.

The evidence indicates that some of the snow in the parking lot was plowed into a pile which was at the top of a

---

[4]The court in Division Three predicated its ruling on past case law which forbade recovery against a business owner because of a fall on a sidewalk in front of the business. *See Ainey,* 135 Wash. at 56; *cf. Gardner v. Kendrick,* 7 Wn. App. 852, 503 P.2d 134 (1972), *review denied,* 81 Wn.2d 1009 (1973). However, these rulings were in turn based on the proposition that the care of a public sidewalk was the responsibility of a municipality and not the adjoining property owner. *See Ainey,* at 57-58 ("The basis of the rule is that it is the duty of the municipality and not of the abutting property owner to keep the streets and sidewalks in a reasonably safe condition for travel."). Therefore, this case law may be inapposite to a question of a fall on ice which is in a "private" parking lot that is not under the jurisdiction of a municipality. Compare *Geise v. Lee,* 84 Wn.2d 866, 529 P.2d 1054 (1975), which recognized that a landlord had a duty to remove dangerous natural accumulations of ice and snow in tenant common areas.

sloping area. There was also evidence that the ice on which the appellant slipped was formed by the melting of this pile of snow and then the refreezing of the runoff. It appears from the record that there was an alternative, safer area where the snow accumulation could have been plowed. Any reasonable inference drawn from the evidence may defeat summary judgment, and the evidence in this case indicates that respondents may have breached a duty owed to the appellant. *Hash*, 110 Wn.2d at 916.[5]

Respondents also contend, however, that even if they had a duty to the appellant, the duty was negated by the evidence which indicates that the appellant was aware of the dangerous condition. Aside from the fact that we disagree as to the inferences which can be drawn from the evidence that the appellant was generally aware of the ice and had already traversed the same ground before he fell, we believe that the obviousness of the ice and precautions taken by the appellant goes to a question of comparative negligence, and cannot, under the facts of this case, defeat the appellant's recovery on summary judgment. It is not negligence per se for a person to go on dangerous premises. *Cf. Johnson v. Mobile Crane Co.*, 1 Wn. App. 642, 646, 463 P.2d 250 (1969), *review denied*, 77 Wn.2d 963 (1970).

In conclusion, there were issues of material fact as to whether the respondents breached their duty to the appellant, and we reverse and remand on this basis.

WEBSTER, A.C.J., and BAKER, J., concur.

---

[5]The case of *Bates v. Grace United Methodist Church*, 12 Wn. App. 111, 529 P.2d 466 (1974), cited by the respondents, does not compel a different result. In that case, a panel of this court upheld the dismissal of a negligence action on the part of an ice "slip and fall" victim because he had shown no evidence of a breach of duty. That case turned on the fact that there was no evidence of what precautions the church had or had not taken with respect to the slippery walks. Without such evidence, the church could not be held liable for injuries resulting from the natural accumulation of ice and snow on the sidewalks. *See Ainey*, 135 Wash. at 56. In the present case, there were facts indicating that the respondents actively altered the natural accumulation of snow in a private area where the fall occurred and may have done so negligently.